UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Ericka Khounedaleth,                                      Case No. 20-cv-2325 (WMW/BRT)

Plaintiff,

**ORDER**

v.

City of Minneapolis et al.,

Defendants.

---

Before the Court is Defendant City of Minneapolis's (Minneapolis) motion to dismiss Plaintiff Erica Khounedaleth's claims against Minneapolis. (Dkt. 20.) For the reasons addressed below, the Court grants Minneapolis's motion to dismiss as to Counts 4 and 6 and denies the motion as to Counts 5 and 7.

**BACKGROUND**

Khounedaleth, a Minnesota resident, attended a protest in downtown Minneapolis on May 31, 2020, in the aftermath of the murder of George Floyd. Minneapolis, a municipal corporation, is responsible for the Minneapolis Police Department (MPD). Defendants Officer Doe #1 and Officer Doe #2 are two as-yet unidentified MPD officers.

On May 31, 2020, Minneapolis Mayor Jacob Frey issued Emergency Regulation 2020-2-2, which implemented a city-wide curfew between 8:00 p.m. on May 31, 2020, and 6:00 a.m. on June 1, 2020. Khounedaleth alleges that she and two friends arrived at the protest at 6:30 p.m. and remained in Khounedaleth's vehicle during their time at the protest. Beginning at 8:00 p.m., when the curfew commenced, MPD officers blocked off

the street on which Khounedaleth was driving.  Khounedaleth maintains that, at 8:10 p.m., she attempted to leave the area and return home.

Khounedaleth followed several other vehicles that were attempting to exit through a parking lot.  Khounedaleth alleges that MPD officers allowed two other vehicles to leave before stopping Khounedaleth's vehicle.  Two officers, whose identities Khounedaleth does not know and whom she refers to as Officer John Doe #1 and Officer John Doe #2, approached Khounedaleth's vehicle with their weapons raised, opened Khounedaleth's door, and pulled Khounedaleth by her right shoulder from her vehicle. Khounedaleth alleges that she was "thrown to the ground" and that one of the officers deployed tear gas, which caused her to experience "burning pain" and difficulty breathing. Khounedaleth was then arrested, taken to the Hennepin County Jail and issued a citation for unlawful assembly and curfew violation.  The charges against Khounedaleth were dismissed on July 23, 2020.

Khounedaleth commenced this action on November 13, 2020, and amended her complaint on February 8, 2021.  Khounedaleth advances ten claims to relief, only four of which are relevant to Minneapolis's pending motion to dismiss.  Count 4 of the amended complaint alleges that Defendants violated Khounedaleth's right to equal protection under the Fourteenth Amendment to the United States Constitution.  Count 5 alleges that Minneapolis is liable for MPD officers' policy and custom of using excessive force against civilians in violation of the Fourth Amendment.  Count 6 alleges that Defendants violated Khounedaleth's rights to freedom of movement and to be present in public under the Fourteenth Amendment.  Count 7 alleges that Minneapolis violated Khounedaleth's

First Amendment rights to free speech and assembly.  Minneapolis moves to dismiss

Counts 4, 5, 6, and 7.

## ANALYSIS

A complaint must allege sufficient facts that, when accepted as true, state a

facially plausible claim to relief.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A claim

must be dismissed if the complaint fails to state a claim on which relief can be granted.

Fed. R. Civ. P. 12(b)(6).  When determining whether the complaint states such a claim, a

district court accepts as true all factual allegations in the complaint and draws all

reasonable inferences in the plaintiff's favor.  *Blankenship v. USA Truck, Inc.*, 601 F.3d

852, 853 (8th Cir. 2010).  The factual allegations need not be detailed, but they must be

sufficient to "raise a right to relief above the speculative level" and "state a claim to relief

that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007).

A plaintiff, however, must offer more than "labels and conclusions" or a "formulaic

recitation of the elements of a cause of action."  *Id.* at 555.  Legal conclusions that are

couched as factual allegations may be disregarded by the district court.  *See Iqbal*, 556

U.S. at 678–79.

### I.      Municipal Liability (Counts 4 and 5)

Minneapolis seeks dismissal of Counts 4 and 5 of the amended complaint, arguing

that Khounedaleth fails to sufficiently allege municipal liability pursuant to 42 U.S.C. §

1983.

Section 1983 provides a civil cause of action against:

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws . . . .

42 U.S.C. § 1983. A Section 1983 claim against a municipality cannot be based on vicarious liability, however. *See Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 403 (1997). A municipality may be subject to Section 1983 liability for the actions of its employees only if the inadequate training of its employees, a municipal policy or an unofficial municipal custom causes a constitutional injury. *See City of Canton v. Harris*, 489 U.S. 378, 388 (1989) (training); *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978) (policy or custom); *see also Bd. of Cnty. Comm'rs*, 520 U.S. at 403–04. Here, the amended complaint alleges municipal liability based on a policy or unofficial custom. The Court addresses each allegation in turn.

### A.    Municipal Policies

"[A] policy is an official policy, a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters." *Mettler v. Whitledge*, 165 F.3d 1197, 1204 (8th Cir. 1999) (internal quotation marks omitted). "[W]hether an official had final policymaking authority is a question of state law." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986) (observing that "[a]uthority to make municipal policy may be granted directly by a legislative enactment or may be delegated by an official who possesses such authority"). When determining whether an official has policymaking authority, courts consult applicable municipal

4

charters, codes or ordinances. *See Davison v. City of Minneapolis*, 490 F.3d 648, 661 (8th Cir. 2007). To survive a motion to dismiss, a plaintiff need not plead the specifics of a policy, but must "allege facts [that] would support the existence of an unconstitutional policy or custom." *Doe ex rel. Doe v. Sch. Dist. of City of Norfolk*, 340 F.3d 605, 614 (8th Cir. 2003).

Khounedaleth alleges that Minneapolis promulgated an unconstitutional policy allowing "MPD supervisors to indiscriminately authorize MPD officers to deploy chemical irritants." And she alleges that the MPD Code of Conduct "provides no guidelines or limitations as to when a supervisor may authorize the use of such chemical agents by MPD officers." Minneapolis maintains that the MPD Code of Conduct is constitutional on its face because it does not mandate unconstitutional conduct. [1]

Accepting Khounedaleth's allegations about the MPD Code of Conduct as true, the issue is whether a policy that allows MPD supervisors discretion to authorize the use of chemical agents is constitutional. A municipality may not be held liable under Section 1983 merely because the municipality failed to implement a policy that would have prevented an unconstitutional act by an employee otherwise left to the employee's discretion. *Atkinson v. City of Mountain View*, 709 F.3d 1201, 1216 (8th Cir. 2013) (internal quotation marks omitted). The United States Court of Appeals for the Eighth Circuit has held that a county's "decision to rely on its employees' judgment is

---

[1]     Although the Court may consider exhibits attached to the pleadings or documents necessarily embraced by the pleadings, *see Ashanti v. City of Golden Valley*, 666 F.3d 1148, 1151 (8th Cir. 2012), neither party has provided the Court with a copy of the MPD Code of Conduct.

certainly not unconstitutional in and of itself, especially in an area where so many diverse fact situations will inevitably present themselves, and in which the exercise of particularized judgment is so important." *Dick v. Watonwan County*, 738 F.2d 939, 942 (8th Cir. 1984). Here, Khounedaleth alleges, at most, that MPD supervisors had discretion under the MPD Code of Conduct to authorize the use of chemical agents. Without more, Khounedaleth has not sufficiently alleged that such a policy is unconstitutional.

Khounedaleth has not sufficiently alleged the existence of an unconstitutional policy that would render Minneapolis liable under Section 1983.

### B.     Unofficial Custom

To state a claim for Section 1983 liability based on a municipal custom, a plaintiff must plead facts that establish (1) "the existence of a continuing, widespread, persistent pattern of unconstitutional misconduct" committed by the municipality's employees; (2) "deliberate indifference to or tacit authorization" of the misconduct by policymaking officials after those officials have received notice of the misconduct; and (3) that the plaintiff was injured by actions taken pursuant to the custom, such that "the custom was a moving force behind the constitutional violation." *Corwin v. City of Independence*, 829 F.3d 695, 700 (8th Cir. 2016) (internal quotation marks omitted). Even if a plaintiff is not privy to the facts necessary to describe the alleged custom with specificity, the complaint must allege facts that would support the existence of an unconstitutional custom. *Crumpley-Patterson v. Trinity Lutheran Hosp.*, 388 F.3d 588, 591 (8th Cir. 2004). Khounedaleth alleges that Minneapolis has a municipal custom of using excessive

force, in violation of the Fourth Amendment to the United States Constitution, and engaging in selective enforcement, in violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. The Court addresses each claim in turn.

### 1.    Custom of Selective Enforcement (Count 4)

Khounedaleth alleges that Minneapolis violated her Fourteenth Amendment right when MPD Officers Doe #1 and Doe #2 stopped her car after letting the two cars before her exit. She contends that she was stopped because of her race, a violation of the Fourteenth Amendment. Minneapolis argues that Khounedaleth fails to allege that Minneapolis has a municipal custom of selective enforcement in violation of the Equal Protection Clause.

To state a claim that Minneapolis has an unofficial custom of selective enforcement, Khounedaleth must plead facts sufficient to allege that there was a widespread pattern of selective enforcement, Minneapolis had notice of the custom and nevertheless acted with deliberate indifference, and her injuries were the result of the custom. *See Corwin*, 829 F.3d at 700.

Khounedaleth relies on a 2006 report from the Minnesota Council on Crime and Justice. Although this report is not attached to her amended complaint, Khounedaleth argues that the amended complaint necessarily embraces the report. "Documents necessarily embraced by the pleadings include documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading." *Ashanti v. City of Golden Valley*, 666 F.3d 1148, 1151 (8th

7

Cir. 2012) (internal quotation marks omitted). As Khounedaleth alleges the contents of the report in her complaint and Minneapolis does not dispute the report's authenticity, the report is embraced by Khounedaleth's amended complaint. *Id.* The Court may, therefore, consider the report in deciding a motion to dismiss.

The report provides that "[s]tudies from across the country have shown that a disproportionate number of African Americans are routinely stopped and searched while driving," a finding that "holds true in Minnesota." But Khounedaleth alleges no specific facts pertaining to instances of selective enforcement of the law in Minneapolis, let alone a pattern of such conduct. Even if the vague assertion in the cited report were sufficient to allege a widespread pattern, Khounedaleth's claim fails because her allegations that Minneapolis had notice and acted with deliberate indifference or tacitly authorized selective enforcement conduct are merely conclusory. Khounedaleth alleges that "Minneapolis has known for years that its police officers selectively enforce the law in a manner that discriminates on the basis of race." But she provides no additional detail. A plaintiff must offer more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Bell Atl. Corp.*, 550 U.S. at 555.

Because Khounedaleth's allegations that Minneapolis had notice of MPD officers' selective enforcement of the law are conclusory, Minneapolis's motion to dismiss as to Count 4 is granted.

### 2.    Custom of Using Excessive Force (Count 5)

Khounedaleth alleges that MPD officers have used excessive force against civilians "[f]or years" without discipline, and that during the period between May 28,

2020, and May 31, 2020, MPD officers engaged in an unofficial custom of using tear gas, less-lethal projectiles,[2] and excessive force against civilians.  Minneapolis contends that Khounedaleth's complaint "does not contain sufficient facts to establish that Minneapolis had a custom of using force against protestors in an unconstitutional manner."

The four-day period between May 28 and May 30 was too short of a time period to establish a "persistent and widespread pattern," Minneapolis contends.  And even if that time period were sufficient, Minneapolis denies that it displayed deliberate indifference to or tacitly authorized the conduct of the MPD officers.  Disputing this argument, Khounedaleth contends that the period was long enough to put Minneapolis on notice and that Minneapolis was aware of the use of force during the unrest following the death of George Floyd.

Khounedaleth must first allege facts demonstrating that the officers engaged in a pattern of widespread unconstitutional conduct.  *See Corwin*, 829 F.3d at 700. Khounedaleth alleges that MPD officers maced protestors from their vehicles without warning "on multiple occasions" before and after the imposition of the curfew, deployed tear gas and fired less-lethal projectiles during the curfew, and "attacked protesters from moving vehicles."   Accepting these allegations in the light most favorable to Khounedaleth, the Court concludes that she has alleged facts demonstrating a pattern of unconstitutional conduct.  *See Tirado v. City of Minneapolis*, 521 F. Supp. 3d 833, 841 (D. Minn. 2021) (finding that ten incidents of police misconduct towards journalists during the unrest following the murder of George Floyd were sufficient to allege a pattern

---

[2]     Khounedaleth does not allege that she was injured by a less-lethal projectile.

9

of unconstitutional conduct).   Moreover, Khounedaleth alleges multiple instances of

MPD officers using excessive force between 2010 and 2020.   These incidents, if proven,

could constitute circumstantial evidence of a pattern of unconstitutional conduct.

Khounedaleth also must allege that policymaking officials were deliberately

indifferent to or tacitly authorized the conduct after receiving notice.  *Corwin*, 829 F.3d at

700.   Khounedaleth alleges that Minneapolis was aware of the MPD officers' tactics

because of widespread news reporting and social media posts.   She argues that

Minneapolis demonstrated deliberate indifference by failing to "supervise or provide

adequate instruction" to MPD officers about how to manage the crowds during the

curfew despite Minneapolis's alleged knowledge of the MPD's tactics.   Accepting these

allegations as true, Khounedaleth sufficiently pleads facts alleging deliberate

indifference.

Khounedaleth also must allege that she was harmed by the alleged custom.  *Id.*

Khounedaleth alleges that two MPD officers forcibly removed her from her car, pushed

her to the ground, and tear gassed her.  Accepting these allegations as true, Khounedaleth

has sufficiently pled that she was harmed by the MPD's alleged custom of using

excessive force against civilians.

In summary, because Khounedaleth alleges sufficient facts to state a claim for

Section 1983 liability based on a municipal custom of using excessive force in violation

of the Fourth Amendment, Minneapolis's motion to dismiss Count 5 is denied.

## II.     Fourteenth Amendment Right to Be Present in Public (Count 6)

Khounedaleth alleges that the city-wide curfew violated her right "to be present in public under the Fourteenth Amendment's privileges or immunities clause."  Minneapolis argues that the right to public presence is subject to reasonable limitations as to time and place, which were imposed.

In *City of Chicago v. Morales*, a three-justice plurality of the Supreme Court of the United States observed that the " 'right to remove from one place to another according to inclination' [is] 'an attribute of personal liberty' protected by the Constitution."  527 U.S. 41, 53 (1999) (quoting *Williams v. Fears*, 179 U.S. 270, 274 (1900)).  But this right has not been further addressed by the Supreme Court, which "has always been reluctant to expand the concept of substantive due process," *Collins v. City of Harker Heights*, 503 U.S. 115, 125 (1992), and "exercise[s] the utmost care whenever [it is] asked to break new ground" in the field of substantive due process, *Washington v. Glucksberg*, 521 U.S. 702, 720 (1997).  Moreover, the Eighth Circuit has expressly declined to decide whether there is a fundamental right to intrastate travel under the United States Constitution.  *See Doe v. Miller*, 405 F.3d 700, 713 (8th Cir. 2005).  In the absence of an established Fourteenth Amendment right to be present in public, Khounedaleth's claim fails.

Accordingly, Minneapolis's motion to dismiss as to Count 6 is granted.

## III.    First Amendment (Count 7)

Minneapolis moves to dismiss Khounedaleth's claim that Minneapolis's imposition of Emergency Regulation 2020-2-2, which imposed a city-wide curfew from 8:00 p.m. on May 31, 2020, to 6:00 a.m. on June 1, 2020, infringed her First Amendment

right to free speech and assembly.  Minneapolis argues that the curfew was a reasonable time, place and manner restriction on the right to freedom of speech because the restriction was content-neutral and narrowly tailored.

The First Amendment prohibits the government from enacting laws "abridging the freedom of speech . . . or the right of the people peaceably to assemble."  U.S. Const. amend. I.  The government "has no power to restrict expression because of its message, its ideas, its subject matter, or its content."  *Reed v. Town of Gilbert*, 135 S. Ct. 2218, 2226 (2015) (internal quotation marks omitted).  The government's ability to limit speech is particularly limited in traditional public forums, such as streets and parks.  *Perry Educ. Ass'n v. Perry Loc. Educators' Ass'n*, 460 U.S. 37, 45 (1983).  If a municipality restricts speech in a public forum based on the content of the speech, the municipality must demonstrate that the regulation is "necessary to serve a compelling state interest and that it is narrowly drawn to achieve that end."  *Id.*  A governmental entity also may regulate "the time, place, and manner of expression" if the regulation is content-neutral, narrowly tailored to serve a significant government interest, and leaves open ample alternative channels of communication.  *Id.*

Khounedaleth does not allege any facts suggesting that the curfew order was not content-neutral.   Therefore, in order to survive Minneapolis's motion to dismiss, Khounedaleth must sufficiently plead that the curfew order was not a reasonable regulation of the time, place and manner of speech, that Minneapolis failed to narrowly tailor the curfew to serve a significant government interest, or that the curfew did not leave open ample alternative channels of communication.

In *Menotti v. City of Seattle*, 409 F.3d 1113, 1142 (9th Cir. 2005), the United States Court of Appeals for the Ninth Circuit held that an order restricting access to downtown Seattle during unrest surrounding a conference of the World Trade Organization was a constitutional time, place and manner restriction.  But "critically, *Menotti* was decided on summary judgment, where the district court had an evidentiary record by which to evaluate whether the challenged curfew was narrowly tailored and whether it left open ample alternative channels for communication."  *NAACP of San Jose v. City of San Jose*, No. 21-cv-1705-PJH, 2021 WL 4355339, at *12 (N.D. Cal. Sept. 24, 2021) (denying a city's motion to dismiss a First Amendment challenge to a curfew order enacted during the unrest following the murder of George Floyd).

Khounedaleth argues that the curfew order was not narrowly tailored.  She alleges that, because the unrest prompting the imposition of the curfew was confined to a small area around the Third Precinct, a city-wide curfew was unnecessary.  She also alleges that the curfew "left few if any alternative avenues for expression available, particularly for those like [Khounedaleth] who work during the day."  Accepting Khounedaleth's allegations as true and drawing all reasonable inferences in her favor, Khounedaleth has adequately alleged facts sufficient to state a claim that the curfew order was an unreasonable time, place and manner restriction because it was unnecessarily broad and did not leave open ample alternative channels of communication.

For these reasons, Minneapolis's motion to dismiss as to Count 7 is denied.

## ORDER

Based on the foregoing analysis and all the files, records and proceedings herein,

**IT IS HEREBY ORDERED** that Defendant City of Minneapolis's motion to dismiss,

(Dkt. 20), is **GRANTED** as to Counts 4 and 6 and **DENIED** as to Counts 5 and 7.


Dated:  January 24, 2022                                    s/Wilhelmina M. Wright
                                                            Wilhelmina M. Wright
                                                            United States District Judge